

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
KANWAL JAFRI,

                Plaintiff.                         COMPLAINT

        -against-

LM SERVICES LLC, a wholly owned
Subsidiary of S. SCHWAB
COMPANY, INC.



                Defendants.

Demand for Jury Trial
------------------------------------------------------X

       Plaintiff, by and through her attorney, James B. LeBow, Esq., complain of the defendants as follows:

## I. PRELIMINARY STATEMENT

       Plaintiff, Kanwal Jafri, (hereinafter Plaintiff) brings this action to redress the constitutional violations incurred due to the discriminatory employment practices of her former employer, LM Services, LLC, a wholly owned subsidiary of S. Schwab Company, Inc. (hereinafter S. Schwab). Plaintiff was discriminated against based upon her national origin. Plaintiff's parents are from Pakistan. Plaintiff's family still resides in Pakistan and Plaintiff frequently still visits her family in Pakistan. Plaintiff was subject to hateful bigotry because she is of Pakistani and Arab origin, and of Muslim faith. Upon speaking out about the discriminatory manner in which she was treated at the hands of her employer, Plaintiff was retaliated against and fired.

## II. JURISDCITION AND VENUE

1. This court has jurisdiction over this matter pursuant to 28 USC § 1331; Title VII of the Civil Rights Act of 1964 §§ 703-704, as amended 42 USC §§ 2000e-2, 2000e-3, respectively, and 42 USC §§ 2000e-6; and, 28 USC §§ 1981, 1981a, 1983, and 1988.

2. Venue is proper in this district, in that some or all of the acts involved in this complaint took place in the Southern District of New York.

## III. PARTIES

3. Plaintiff Kanwal Jafri, age 24, is a resident of New York, New York.  From February 17, 2006 until July 18th 2006, Plaintiff was the target of employment discrimination at S. Schwab and hateful bigotry because she is of Pakistani and Arab origin, and a believer in the Muslim religion.  When she complained of such discriminatory practices, she was retaliated against and fired.

4. Defendant S. Schwab Company, is the whole owner of the subsidiary company LM Services, LLC, and is a leader in providing branded children's wear.  S. Schwab Company owns, operates, and controls LM Services, LLC located at 131 W. 33rd Street, New York, NY 10001.

## IV. FACTS

5. Plaintiff is a graduate of Rutgers University and has a Bachelor of Arts in Economics and Psychology.  She excelled in school and graduated in three years, rather than the typical four years.

6. Upon graduation, Plaintiff worked as a "planning manager" for a comparable company to S. Schwab located in New Jersey.

7.  Plaintiff left her old company in pursuit of finding a similar job, which she enjoyed

and excelled at, in New York City.

8. Plaintiff had exceptional references from her previous employer and was well qualified for a similar position at S. Schwab.

9. While working at S. Schwab, Plaintiff had been praised on many occasions by her direct supervisor, Savino, for her superior job performance including her computer skills and presentation skills.

10. However, once Plaintiff made a report to Human Resources at S. Schwab concerning the hateful bigotry she was subjected to in her workplace, the feedback Plaintiff received at S. Schwab quickly began to change.

11. On or about March 21, 2005, Plaintiff began work at S. Schwab with the title of "planning manager". Plaintiff's direct supervisor was Teresa Savino (hereinafter Savino), and her (Savino's) direct supervisor was Steve Zaritsky (hereinafter Zaritsky). Zaritsky is the Vice President of sales.

12. On or about February 17, 2006, the first incident of discrimination occurred,   when Plaintiff, Zaritsky, Savino, and a couple other S. Schwab employees (namely, Lorri Tagan and Jacqui Dimauro) left work early to attend a wake. When they where on their way to the funeral, riding on the subway, Zaritsky asked Plaintiff if she knew that Osama Bin Laden was thought to be hiding in Pakistan. Zaritsky then asked Plaintiff, in substance, if she was related to Osama, and if she was going to visit him in the caves. Savino responded to Zaritsky's comments and stated (in substance): 'What did you just say? Are you crazy?' and  cautioned Zaritsky that Human Resources would not like what he just said. However, Zartisky did not stop there. Zaritsky then stated (in substance): Oh, come on, she's going to Pakistan, she's going to visit Osama.

3

13.  These comments made the Plaintiff feel humiliated and left Plaintiff stunned. Plaintiff was frightened and was unaware why Zaritsky had targeted her for such hateful bigotry.

14.  The next incident occurred on or about March 2, 2006.  Plaintiff had returned from a visit to Pakistan. Also around the same time, President Bush was about to visit Pakistan and there had been a bombing of the U.S. Consulate in the city of Karachi.

15.  On or about March 2, 2006, the day the news of the bombing broke, Plaintiff attended a meeting at work conducted by Zaritsky and Savino.  Zartisky asked  Plaintiff if she heard about the bombing and if she had talked to Osama about it.

16.  Once again Plaintiff felt hurt and frightened by this bigotry directed towards her.

17.  On or about March 10, 2006, Plaintiff received her 2005 annual performance review, signed by both Savino and Zaritsky, which contained a surprising number of criticisms.  The criticism was surprising because Plaintiff had never received verbal criticism of her job performance, but rather has always received praise from her supervisors.

18. Specifically, the review cited one instance in which Plaintiff was unable to stay at work later than her usual quitting time, yet Plaintiff was not told that she was required to stay late that particular evening, and she had a commitment that she was unable to cancel.

19. The review also criticized Plaintiff's level of motivation at work., however, contrary to this assessment, Plaintiff had stayed late on her own initiative and had  taken on extra responsibilities to help out the company and her colleagues.  For  instance, Plaintiff covered for her colleague and took on the colleagues  responsibilities when she was out of town.

20. The performance review also stated some negative comments about Plaintiff's attendance and tardiness to work.  On of the specific days cited regarding    Plaintiff's tardiness to work, Plaintiff's lateness was due to the Transit Strike, which caused countless delays

4

throughout the city.

21. In addition, the same day that Plaintiff was tardy to work, she was also commended and praised by Savino for a successful presentation that she gave at work that day.

22. In general, the performance review unfairly portrayed Plaintiff in a negative light. Plaintiff was a very committed employee and successfully executed her job duties.

23. After the unfairly negative performance review, Plaintiff realized that her supervisor's discriminatory remarks were more than just benign, albeit ignorant, comments. Plaintiff realized that she was being targeted at work due to her national origin, race, and/or religion and decided to report the above-described instances of bigotry.  Plaintiff made her first report of the offensive comments by Zaritsky to the Human Resources Department on March 10, 2006.

24. Zaritsky moved Plaintiff from an office to a cubicle after Plaintiff reported Zartisky to Human Resources.

25. Some time in April 2006, Zaritsky approached Plaintiff at her cubicle and either made a pathetic attempt at an apology for his previous remarks, or just further mocked Plaintiff. Zaritsky stated, in substance: I hope we can be friends.  Zaritsky apparently had a change of heart in that immediately after expressing a desire for friendship stated, in substance: Actually, no, I don't think we can be.  Zaritsky then turned and walked away.

26. The hostility in Plaintiff's work environment increased after her report of Zaritsky to Human Resources.  Specifically, Zaritsky would either be very short with Plaintiff, or act as if Plaintiff did not exist, depending on his mood for the day.

27. On June 15, 2006, three months after her annual performance review, Plaintiff received a punitive letter of warning in which she was given one month to better her performance

5

or her employment would be terminated.

28. Despite Plaintiff's best efforts to rectify the issues stated in the letter, which issues she thought were fabricated and virtually non-existent in any event, her employment was terminated on July 18, 2006.

29. On or about September 8, 2006, Plaintiff filed a timely charge of discrimination with the United States Equal Employment Opportunity Commission (hereinafter EEOC), attached hereto as Exhibit "A".

30. On January 17, 2007, the EEOC issued a Notice of Right to Sue to the Plaintiff, attached hereto as Exhibit "B".

31. As demonstrated by the attached Exhibits, all administrative prerequisites to this filing have been met.  Plaintiff has timely commenced this action within 90 days of receipt of the Notice.

32. As a result of Defendants unlawful actions, Plaintiff has suffered great emotional and mental distress, loss of wages both present and future, loss of job opportunity, and damage to her reputation.

## V.  AS AND FOR THE FIRST CAUSE OF ACTION:
## TITLE VII VIOLATION (DISCRIMINATION)

33. Plaintiff repeats and reiterates paragraphs 1-32 above, as if fully set forth herein.

34.  The above-described conduct of Zaritsky, plaintiff's supervisor, towards plaintiff inside and outside of the workplace was discriminatory conduct in violation of Title VII of the United States Code (42 USC §2000e-2).  Plaintiff was treated in a discriminatory manner by her employer on the basis of her national origin, race, or religion, or any combination thereof.

35.  Specifically, plaintiff was treated in a manner that adversely affected her status as an

employee due to defendant's discriminatory conduct and/or failure to address the discriminatory attitudes and conduct of its employees, and plaintiff was ultimately discharged due to her national origin, race, and/or religion.

36. The above-described discriminatory conduct made plaintiff feel harassed, frightened, isolated, hurt, and ashamed.

37. As a result of Defendants unlawful actions, Plaintiff has suffered great emotional and mental distress, loss of wages both present and future, loss of job opportunity, and damage to her reputation, all to her detriment, and for which she has suffered damages in the amount of $500,000.00 in compensatory damages. Plaintiff also demands judgment against Defendant in the amount of $500,000.00 in punitive damages.

### VI.  AS AND FOR THE SECOND CAUSE OF ACTION: TITLE VII VIOLATION (RETALIATORY DISCHARGE)

38. Plaintiff repeats and reiterates paragraphs 1-37 above, as if fully set forth herein.

39. Zartisky was aware that Plaintiff reported Zaritsky to the Human Resources department. As described in greater detail above, thereafter Zaritsky set out in a course of conduct aimed at the termination of Plaintiff's employment with S. Schwab. Zaritsky moved Plaintiff from an office to a cubicle, and created a very hostile work environment for Plaintiff. Zaritsky also gave Plaintiff a poor review, which assessment did not accurately reflect the quality of Plaintiff's work Plaintiff was ultimately fired based upon this poor review, which was filled with lies and fabrications. Upon information and belief, Zaritsky's maltreatment of Plaintiff subsequent to her report to Human Resources was in retaliation for Plaintiff's report of Zaritsky's discriminatory remarks, as was her ultimate termination by Defendant.

40.  The firing of Plaintiff in retaliation for reporting Title VII violations in her work

7

place was unlawful. By so doing, defendant violated 42 USC §2000e-3.

41. As a result of Defendant's unlawful actions, Plaintiff has suffered great emotional and mental distress, loss of wages both present and future, loss of job opportunity, and damage to her reputation, all to her detriment, and for which she has suffered damages in the amount of $500,000.00 in compensatory damages. Plaintiff also demands judgment against Defendant in the amount of $500,000.00 in punitive damages.

## VI. AS AND FOR THE THIRD CAUSE OF ACTION: EQUAL RIGHTS VIOLATION (SECTION 1981)

42. Plaintiff repeats and reiterates paragraphs 1-41 above, as if fully set forth herein.

43. Defendant's discriminatory treatment of Plaintiff in the context of her employment on the basis of her national origin, race, and religion deprived her of equal treatment under the law in violation of 42 USC §1981.

44. As a result of Defendant's unlawful actions, Plaintiff has suffered great emotional and mental distress, loss of wages both present and future, loss of job opportunity, and damage to her reputation, all to her detriment, and for which she has suffered damages in the amount of $500,000.00 in compensatory damages. Plaintiff also demands judgment against Defendant in the amount of $500,000.00 in punitive damages.

**WHEREFORE**, Plaintiff prays and requests this court to enter judgment in her favor and against defendant as follows:

(i) $500,000.00 in compensatory damages on each of the first, second, and third causes of action;

(ii) $500,000.00 in punitive damages on each of the first, second, and third causes of action;

8

(iii) attorney's fees and other costs associated with the bringing of this action;

(iv) such other and further relief as the court deems just and proper.


Dated: March 19, 2007                        Respectfully Submitted,
New York, New York

_____
James B. LeBow (JL 4535)
The Law Office of James B. LeBow
488 Madison Ave, Suite 1100
New York, New York 10022
212-868-3311
Fax: 212-868-3123

9

# EXHIBIT A

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| FEPA | |
| X EOC | |

| State or local Agency, if any | | and EEOC |
|---|---|---|

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Ms. Kanwal Jafri | (732)407-2723 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 117 Trieste St. | Iselin, NJ  08830 | 6/13/82 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| S. Schwab Company | 50 | (212)564-5960 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 131 W. 33rd St. | New York, NY  10001 | |

| NAME | | TELEPHONE NUMBER (Include Area Code) |
|---|---|---|
| | | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON (Check Appropriate Box(es)) | DATE DISCRIMINATION TOOK PLACE EARLIEST 2/17/06    LATEST 7/18/06 |
|---|---|

RACE    COLOR    SEX    RELIGION    X NATIONAL ORIGIN

X RETALIATION    AGE    DISABILITY    OTHER (Specify)

CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)

See attached affidavit.

RECEIVED
SEP 11 2006
EEOC-NYDO-CRTIU

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |

SIGNATURE OF COMPLAINANT

_Greg Pomeranter_

| Date | Charging Party (Signature) |

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)    9/8/06

EEOC FORM 5 (10/94

# Affidavit

I, Kanwal Jafri, resident of Iselin, New Jersey, being duly sworn, do hereby state and depose as follows:

I am the claimant, submitting the attached petition through my attorney. I was employed at LM Services LLC, a wholly owned subsidiary of S. Schwab Company, Inc. I began work at LM Services on March 21, 2005, with the title of "BSR (Basic Stock Replenishment) Planning Manager" for a specific item of baby clothing known as a "footie", which is an infant's one-piece. My direct supervisors were Teresa Savino, and over her, Steve Zaritsky.

The first incident occurred on February 17, 2006, when Steve Zaritsky, Teresa Savino, Lorri Pagan, Jacquie DiMauro, and I left work early to attend a wake. I was to leave on my vacation to Pakistan immediately after the wake. I had not been to Pakistan in 10 years and was going to go visit my grandmother. While we were riding the subway, Steve Zaritsky asked if I knew that Osama Bin Laden was thought to be hiding in Pakistan. He asked if I was related to Osama, and if I was going to visit him in the caves. Teresa Savino responded "What did you just say? Are you crazy?" and commented that Human Resources wouldn't like what he said. He then said "Oh, come on, she's going to Pakistan, she's going to visit Osama". His comments associating me with terrorism left me stunned and speechless, as I didn't know why he suddenly had chosen me as a target for this bigotry.

Shortly after I returned from Pakistan, President Bush was about to visit Pakistan, and there had been a bombing of the U.S. consulate in the city of Karachi. On March 2nd, the day the news of the bombing broke, I attended a meeting conducted by Steve Zaritsky and Teresa Savino. Corrine Epstein, who no longer works with the company, was also present. Steve asked me if I heard about the bombing, and asked me if I had talked to

Osama about it. Again I was confused, hurt and frightened by this bigotry directed towards me.

On the 9th of March I received my 2005 annual performance review, signed by both Teresa Savino and Steve Zaritsky, which contained a surprising number of criticisms, which I had not been given written notice of before. The review criticized my motivation, but the single instance given was the one time I was unable to stay late when I had been given no advanced notice and couldn't cancel commitments. Contrary to this assessment, I had often stayed late on my own initiative and had taken on extra responsibility, as when I took on a colleague's responsibilities when she was out of town. A negative comment about my attendance was inappropriate, as the single instance cited occurred on the first day of the Transit Strike, and is at odds with Teresa's previous praise of a presentation I gave that same day. In general I felt that the review was unfairly negative given my true overall commitment and performance.

In the wake of this surprisingly negative performance review, I made my first report of the offensive comments by Steve Zaritsky to the Human Resources department on 3/10/06. I was afraid that Steve's bigoted attitude had affected Teresa's evaluation of me, and wanted the Human Resources department to be aware of it.

As a result of my complaint to HR, the hostility in the work environment increased, and resulted in a punitive letter of warning on 6/15/06. I was given 30 days to better my performance, which the letter of warning claimed was lacking. However, despite my best efforts to address the issues in the complaint, my job was posted on Monster.com previous to the 30 days and my employment was terminated on July 18th 2006.

Kanwal Jafri

Date 9/8/06

# EXHIBIT B



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### New York District Office

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(212) 336-3620
TTY (212) 336-3622
General FAX (212) 336-3625

Vikki Barno
Investigator
Phone (212) 336-3680
Fax (212) 336-3621

January 16, 2007

Kanwal Jafri
117 Trieste Street
Iselin, NJ 08830

Re:    Kanwal Jafri v. S. Schwab Company
       EEOC Charge No. 520-2006-03719

Dear Ms. Jafri:

The Equal Employment Opportunity Commission (EEOC) has concluded its inquiry into your allegation of discrimination. The EEOC has implemented charge prioritization procedures to address the dual problem of our limited resources and growing charge inventory. The procedures call for us to allocate our resources to those charges that are most likely to result in findings of violations of the laws we enforce. In accordance with these procedures, the EEOC has evaluated your charge based on the evidence provided and subsequent phone interview. The evidence fails to indicate that a violation of the law occurred and it is not likely that additional investigation will result in our finding a violation.

You allege that you have been discriminated against based on your national origin.

Respondent states that there was only two comments made about your national origin and it was addressed immediately upon your complaint to Human Resources. Respondent states it asked you if you had received any additional comments which you believed were inappropriate, but you said you did not. Respondent states you admitted you received an apology for the two comments and there had been no other comments made. Respondent states and has provided documentary evidence to support its allegations that you were terminated for poor performance. Additionally, Respondent states and provides evidence that you acknowledged that you agreed with the performance issues in the warning you received and you failed to meet expectations. Respondent states and provides evidence that you agreed Respondent was trying to help you move to the next level, but you had not gone for help. Respondent states your poor performance continued despite your written warning so it decided to terminate you.

Enclosed is your Determination/Notice of Right to Sue. This determination concludes the processing of this charge. Even though you may disagree, this Determination/Dismissal is final. If you wish to pursue the charge, you may file suit on your own in Federal District Court within 90 days of receipt of this letter with the Notice of Right to Sue. The Commission cannot reinstate your right to sue if you or your representative fails to file suit in Federal District Court against Respondent within the 90-day, statutory limit.

Sincerely,

Vikki Barno
Investigator

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Kanwal Jafri<br>117 Trieste Street<br>Iselin, NJ 08830 | From: | New York District Office - 520<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

|  | ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|---|
| EEOC Charge No. | | EEOC Representative | | Telephone No. |
| 520-2006-03719 | | **Vikki L. Barno,**<br>Investigator | | (212) 336-3680 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt **of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Spencer H. Lewis, Jr.*                    1/17/07

Enclosures(s)

Spencer H. Lewis, Jr.,                    (Date Mailed)
Director

cc:    Lori D. Bauer, Esq.
       Jackson Lewis LLP
       59 Maiden Lane
       New York, NY 10038

Enclosure with EEOC
Form 161 (3/98)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This Information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS — Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge, or to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS — Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit **before 7/1/02** -- not 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION — Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE — All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*